IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **vs.** | ) |
| | )    Criminal Action Number |
| **JULIAN B. BURNETT,** | )    **5:06-cr-0457-UWC** |
| | **)** |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

In this appeal from his conviction on charges of indecent exposure and public lewdness on federal property,[2]  Defendant Julian B. Burnett raises the issues of whether consent is an element of these crimes and whether the trial court abused its discretion in sentencing him.  The Court concludes that while consent is not required for the crime of public lewdness, it is required for the crime of  indecent exposure.  The Court also concludes that the Magistrate Judge did not abuse his discretion in sentencing the Defendant.

Thus, the indecent exposure conviction must be reversed; and the public

---

[1]At the conclusion of the hearing on the appeal, the Court and the parties agreed to certify to the Alabama Supreme Court the issue of whether consent is required for a conviction under the Alabama indecent exposure statute. *See* Ala. R. App. P 18. On further reflection, the Court independently concluded that since the resolution of the consent issue would not be dispositive of the case, certification would be inappropriate.

[2]*See* 16 U.S.C. § 668dd (1998); 50 C.F.R.§ 27.83 (2008).

lewdness conviction and sentence are due to be affirmed.

## I. Course of Proceedings

On September 6, 2006, the United States Attorney for the Northern District of Alabama filed a two-count Information charging the Defendant Julian B. Burnett with (1) the crime of indecent exposure,[3] and (2) the crime of public lewdness.[4] On February 28, 2007, he was convicted by a jury on both counts. He was sentenced to

---

[3] Count One reads:

The United States Attorney charges:

That on or about June 20, 2006, In Limestone County, within the Northern District of Alabama, the Defendant
JULIAN B. BURNETT,
while on land acquired for use of the United States and under the concurrent jurisdiction thereof, that is, the Wheeler National Wildlife Refuge, did knowingly commit the crime of indecent exposure, in that the defendant, with intent to arouse and gratify sexual desires of himself and of a person other than his spouse, did expose his genitals under circumstances in which he knew his conduct was likely to cause affront and alarm in a public place, in violation of 50 C.F.R. 27.83 and Title 16, United States Code, Section 668dd.

[4] Count Two reads:

The United States Attorney charges:

That on or about July 20, 2006, in Limestone County, within the Northern District of Alabama, the defendant,
JULIAN B. BARNETT,
while on land acquired for th use of the United States and under the concurrent jurisdiction thereof, that is, the Wheeler National Wildlife Refuge, did knowingly commit the crime of public lewdness, in that the defendant did expose his genitals in a public place and was reckless about whether another would be present who would be offended and alarmed by his act, in violation of 50 C.F.R. 27.83 and Title 16, United States Code, Section 668dd.

a term of six months on April 30, 2007, and judgment was entered on May 3, 2007.[5]
This appeal followed.

Burnett objected to the Information's failure to include a lack of consent of the
victim as an essential element of each of the crimes.  The objection was first raised
at  the charge conference; it was again raised the close of the Government's case in
chief and at the close of all of the evidence. (Tr. Vol. I.,  34; Tr. Vol. II., 13, 82.)

## II. The Facts

The Wheeler Wildlife Refuge is a federal property open to the general public.
In the summer of 2006, the United Fish & Wildlife Service, a federal law enforcement
agency, organized a plain-clothes "sting operation" to address ongoing complaints
from the public concerning disturbing and vulgar homosexual activity occurring in
certain areas of the Refuge, including the Beaverdam Boardwalk area.

On July 20, 2006, Burnett, an admitted homosexual, entered the Beaverdam
Boardwalk section of the Refuge. He encountered an undercover plain-clothes federal
officer, Greg Blanks.

Burnett testified that after he observed Blanks a few moments, Blanks nodded
at him[6] and proceeded to walk down a cleared trail.

---

[5]The six months sentence is the maximum sentence which could have been imposed on
the Defendant in this misdemeanor case.

[6]Blanks denied that he ever nodded at Burnett. Tr. Vol. II., 44.

A:    As he proceeded to walk down the cleared trail, he turned and looked back at me. And then, as he got to the curve of the trail before it goes down into the wooded area, he completely came to a stop, turns around, as if to invite me in. But that was  – that was the last time – then I got out my vehicle there a few minutes. He proceeded to walk into the woods. And  –

Q    At that point, did you lose sight of him?

A    Yes.

A.    Okay. All right.  And where did you go then?

A.    Okay.  I was just walking down the trail. And then he  – he got in sight of me. And so he then kept walking. I was walking. He stopped in the trail.
And as I got closer to him, then, whenever I got to the point of, as you would anyone on the, you know, if out in the public or whatever, we spoke.

Tr. Vol. II., 21, 22.

Blanks testified that Burnett walked towards him and stopped approximately a foot and a half away. They both said "hello."  Tr. Vol. I., 53, 54.

After a short while, Burnett then started looking at Blanks and began to smile. Burnett continued to smile as he unzipped his pants, exposed his penis, and began to masturbate in front of Blanks.  Burnett then said to Blanks, " I want a blow job." *Id.* at 55. Blanks then identified himself as a federal officer; and Burnett immediately placed his penis back into his pants. Burnett was then arrested. *Id.* at 57.

Blanks did not observe any other persons at the point of his encounter with

Burnett. *Id.*; Tr. Vol. II., 6.

In imposing a sentence on Burnett following his conviction, the Magistrate Judge stated that he was imposing the maximum because

> Mr. Burnett, according to the testimony, solicited oral sex from the officer; he committed perjury by testifying in his own defense; and he knew he was HIV positive, thus, risking the possibility of transmitting that disease to others out there.

Doc. 33, Transcript of Sentencing Hearing, Vol. I., 3.

### III. The Controlling Law

The Secretary of the Interior ("the Secretary") is given the power to administer and manage the National Wildlife Refuge System for the benefit of present and future generations of Americans." 16 U.S.C.A. § 668dd (1998). Towards that end, the Secretary is empowered to adopt regulations governing the use of the wildlife refuges. One of the regulations promulgated by the Secretary is found at 50 C.F.R. § 27.83, which provides that "[a]ny act of indecency or disorderly conduct as defined by State or local laws is prohibited on any national wildlife refuge."

### A. Indecent Exposure

Under Alabama law,

> A person commits the crime of indecent exposure if, with intent to arouse or gratify sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm in any public place or on the private premises

of another or so near thereto as to be seen from such private premises.

ALA. CODE § 13A-6-68(a) (1977).

The Commentary to this provision of Alabama law indicates that the words "'affront and alarm' . . . suggest a subjective test of what would likely cause one of those actions in the observer of the exposure. . . ." The law focuses on "the effect of the act upon the victim, rather than the effort to regulate and protect the morals of society generally." *Id.*

Alabama's indecent exposure statute is a "sexual offense," embodied in Article 4 of the Chapter of the Alabama Criminal Code which covers "Offenses Involving Danger to the Person." Therefore, it is an essential element of this crime "that the sexual act was committed without consent of the victim."[7] The Commentary notes that "[t]he consent ...need not be expressed but it may be implied as well." *Id.*

### B. Public Lewdness

A person commits the crime of public lewdness under Alabama law if "[h]e exposes his anus or genitals in a public place and is reckless about whether another may be present who will be offended or alarmed by his act . . . ." ALA. CODE §13A-12-130(a)(1). This crime is an Article 4 ("Obscenity and Related Offenses") offense

---

[7] On this essential element, Alabama law is unequivocal: "Whether or not specifically stated, it is an element of every offense defined in [Article 4] . . . that the sexual act was committed without consent of the victim." ALA. CODE § 13A-6-70(a) (1977).

embodied in Chapter 12 of the Alabama Criminal Code, which contains "Offenses Against Health and Morals."

There is no evidence that the Alabama legislature intended that consent would be an element of the crime of public lewdness.

## C. Construction of Statutes

First, the cardinal rule of statutory construction is that when the meaning of a statute is clear and unambiguous from the language of the statute itself, courts are bound to give effect to the literal or "plain meaning" of the statute. There is no occasion to consult other indicia of intent or meaning.  Singer, Sutherland Statutes and Statutory Construction, 7th Ed., §§ 46:1; 46:4.  "[Alabama] cases uniformly hold that plain language in a statute should be considered to mean what it says." *Ex parte Madison County, Alabama,* 406 So. 2d. 398, 400 (Ala. 1981) (citing *Fletcher v. Tuscaloosa Fed. Sav. and Loan Assn.,* 314 So. 2d 51(1975); *State v. Robinson Land & Lumber Co. of Ala.,* 77 So. 2d 641 (1955); *Hawkins v. Jefferson County,* 169 S0. 720 (1936).

An equally important statutory construction rule is this:

> [i]t is an ancient rule of statutory construction that penal statutes should be strictly construed against the government . . . and in favor of the persons on whom penalties are sought to be imposed. This simply means that words are given their ordinary meaning and that any reasonable doubt about the meaning is decided in favor of anyone subjected to a criminal statute.

Singer, Sutherland Statutes and Statutory Construction, 7th Ed., § 59.3.  *See Holmes*

*v. Lamberth,* 50 So. 2d 140 (Ala.1909) (stating that "this statute, being penal in

nature, must be strictly construed . . . .").  While criminal statutes must be strictly

construed, they "should not be subjected to strained or unnatural construction in order

to work exemption from their penalties . . . . . On the other hand, such statutes are not

to be extended by construction."  *Garrison v. Summers*, 134 So. 675 (Ala.1931).

## D. Requirements for an Information

Like a grand jury indictment, an information is sufficient if it  sets forth the

elements of the crime in a manner which fully informs the defendant of the charge,

and enables him to enter a plea which will bar future prosecution for the same

offense.  The charging document "must set forth each essential element of an offense

in order for a resulting conviction to stand."  *United States v. Poirier,* 321 F.3d 1024,

1028 (11th Cir. 2003).

## E. Sentencing Factors

The United States Supreme Court held in *United States v. Booker*, 534 U.S.

220, 261 (2005) that the factors set forth in 18 U.S.C. §3553(a) should guide the

appellate courts in determining whether a sentence is reasonable.  *Id.* In *Gall v.*

*United States,* ___ U.S. ___, 128 S.Ct. 586 (2007), the Court held that an appellate

court must review the sentence imposed under an abuse of discretion standard; and

that the reviewing court must give substantial deference to the sentence imposed by the trial court.  *See also, United States v. Cole*, Slip Copy 2007 WL 1793388 (C.A. 11 (Fla.)) *1.

 Section 3553(a) of Title 18 of the United States Code enunciates the factors a court must consider in imposing a sentence.  It provides that

> [t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed-
>
>> **(A)** to reflect the seriousness of the offense, to promote respect
>
> for the law, and to provide just punishment for the offense;
>
>> **(B)** to afford adequate deterrence to criminal conduct;
>
>> **(C)** to protect the public from further crimes of the defendant; and
>
>> **(D)** to provide the defendant with needed educational or
>
> vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for-

18 U.S.C.A. § 3553(a).

The Federal Sentencing Guidelines provide for an upward departure in sentencing where the defendant's conduct has resulted in significant danger to public health or where it is "unusually heinous, cruel, brutal, or degrading."  18 U.S.C.A. §

5K2.14; 18 U.S.C.A. §5K2.8.

## IV. Analysis

### A. Indecent Exposure

The issue of whether lack of consent is an element of the crime of indecent exposure under Alabama law is easily put to rest by the plain and unambiguous meaning of the governing statute: "Whether or not specifically stated,  it is an element of every offense defined in [Article 4] . . . that the sexual act was committed without consent of the victim." Ala. Code § 13A-6-70(a) (1977). Indubitably, Alabama's indecent exposure statute is an Article 4 crime–a sexual offense.  Equally clear, lack of consent of the victim is an element of this crime.

The United States argues that it is not required to charge and prove a lack of consent here because the victim is the public at large.  That argument is without merit. As the  Commentary to the indecent exposure statute unambiguously explains, the indecent exposure statute focuses on the effect on the victim, "rather than the effort to regulate and protect the morals of society generally." *Id.*  Further, the  crime of indecent exposure under Alabama law is not an Offense Against Order and Safety (Chapter 11),  nor an Offense against Health and Morals (Chapter 12),  nor an Offense Against the Family (Chapter 13).

If the Alabama legislature had wished to place indecent exposure in the same

category of crimes as public lewdness, it could have done so. It chose not to do so. Instead it legislated indecent exposure into the category labeled "sexual crimes," and thus to require proof of a lack of consent as an essential element of the crime. Neither the courts nor the prosecutors may ignore the indecent exposure statute's plain requirement of a lack of consent of the victim, or to extend the reach of that penal statute by a liberal construction which omits one of its elements.

It follows that because the Information failed to allege lack of consent as an element of Count I, and the trial court denied Burnett's specific request for a jury charge on that element, the conviction of indecent exposure cannot stand.[8] It will be reversed and the case remanded for appropriate disposition.

## B. Public Lewdness

On the other hand, there is no contention that consent is an element of the crime of public lewdness. Accordingly, Burnett's conviction will stand with respect to the crime of public lewdness.

## C. Sentencing Factors

The issue whether the trial court's imposition of a six month sentence upon Burnett was unreasonable is likewise easily put to rest. Foremost, in his brief to this Court, Burnett articulated the wrong standard of review for this Court to employ in

---

[8]Separately, the trial court also erred in charging the jury that

assessing the reasonableness of the sentencing.  Although Burnett claimed that *de novo* is the appropriate standard, the standard articulated by the Eleventh Circuit is the deferential "review for reasonableness."

Under this deferential standard, it is sufficient to note that the trial court included in the sealed transcript of the sentencing hearing (1) that it would use Burnett's HIV status in formulating the sentence and (2) that it had considered the factors under 18 U.S.C. § 3553(a).  The trial court also noted that it considered the fact that Burnett committed perjury when he took the stand in his own defense as well as the seriousness of the sexual offense Burnett was charged with committing–especially with respect to Burnett's HIV status.

The court's consideration of Burnett's HIV status is in line with controlling Eleventh Circuit precedent, which holds that courts may consider a defendant's HIV status when the offense either did or had the potential to communicate the virus to others.  *See e.g. United States v. Blas*, 360 F.3d 1268, 1273-74 (11th Cir. 2004) (upward departure justified when defendant knowingly subjected a minor to HIV through sexual contact).

Accordingly, because the court outlined its consideration of the factors under 18 U.S.C. § 3553(a) and because the Eleventh Circuit recognizes upward departures in sentencing when extreme conduct, such as possible transmission of HIV, is

involved, the sentence imposed by the trial court is reasonable under the deferential "review for unreasonableness" standard.

## CONCLUSION

By separate order, the Defendant's conviction of indecent exposure will be reversed; and his conviction of public lewdness and sentence will be affirmed.

_____
U.W. Clemon
United States District Judge